

**ORDERED in the Southern District of Florida on August 26, 2015.**

Robert A. Mark, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re: | ) CASE NO. 91-31884-BKC-RAM |
| | ) CHAPTER 11 |
| PIPER AIRCRAFT CORPORATION, | ) |
| | ) |
| Debtor. | ) |
| | ) |

**ORDER DENYING MOTIONS TO ENFORCE CHANNELING
INJUNCTION AND GRANTING MOTION FOR PROTECTIVE ORDER**

The Court confirmed a chapter 11 plan (the "Plan") in this case on July 11, 1995 [DE #2201]. The Plan provided for the sale of substantially all of the Debtor's assets to Piper Aircraft, Inc. ("New Piper"). The Plan included provisions protecting New Piper from successor liability that it might otherwise have been subjected to if sued by victims of post-

1

confirmation crashes of planes built by the old company ("Old Piper"). This protection was accomplished by the creation and funding of the Piper Aircraft Corporation Irrevocable Trust (the "Trust") and a channeling injunction in the Plan that requires victims of post-confirmation crashes to assert certain claims against the Trust, and not against New Piper. The requirement to assert claims against the Trust applies to those claims that fall within the definition of a "Future Claim," as that term is defined in the Trust documents and the Plan.

The Trust and channeling injunction have worked effectively for twenty years without this Court's intervention. However, there is now a dispute over whether the claims asserted by the victims of two plane crashes are Future Claims which must be brought against the Trust or whether they are claims that may be pursued against New Piper in state court lawsuits filed in Florida and Pennsylvania. For the reasons discussed below, the Court finds that the claims are not Future Claims and may be pursued in the state court cases pending against New Piper.

### Procedural Background

The issue of whether the claims asserted in the state court lawsuits are Future Claims is framed in Piper Aircraft, Inc.'s Motion to Enforce Confirmation Order and for Sanctions Against Plaintiffs and Plaintiffs' Attorneys for Contempt of Court [DE #3087] (the "First Motion to Enforce") and Piper Aircraft,

2

Inc.'s Second Motion to Enforce Confirmation Order and for Sanctions Against Plaintiffs and Plaintiffs' Attorneys for Contempt of Court [DE #3101] (the "Second Motion to Enforce," and together with the First Motion to Enforce, the "Motions to Enforce"). The Motions to Enforce allege that the Plaintiffs in the lawsuits violated the channeling injunction in the Confirmation Order (as more fully described later in this Order) by suing New Piper in state court.

The First Motion to Enforce involves two lawsuits stemming from the 2014 crash of a Piper Seneca PA-34-200T aircraft built by Old Piper in 1978. The crash killed three passengers. The Plaintiffs from this crash (the "Amerosa Plaintiffs") filed two lawsuits against New Piper and other defendants, one in Florida (*Heather Theobald et al. v. Piper Aircraft, Inc. et al.*, Case No. 2015-009438-CA-01) (the "Amerosa Florida Case") and one in Pennsylvania (*Heather Theobald et al. v. Piper Aircraft, Inc. et al.*, Case No. 150502507) (the "Pennsylvania Case"). The amended complaint in the Amerosa Florida Case and the complaint in the Pennsylvania Case (collectively, the "Amerosa Complaints") are nearly identical and state that: "Plaintiffs specifically do not assert any claims against the Piper Trust or 'Old Piper'... and specifically represent that the acts complained of... do not constitute a 'future claim....'"[DE #3087-7 p. 4].

In addition to filing the First Motion to Enforce, New Piper removed the Amerosa Florida Case to this Court, now pending as Adv. No. 15-1390-RAM (the "Removed Amerosa Florida Case"), and removed the Pennsylvania Case to the United States District Court for the Eastern District of Pennsylvania, now pending as Case No. 2:15-cv-03184-LFR (the "Removed Pennsylvania Case"). The Removed Pennsylvania Case is currently abated pending this Court's ruling on the Motions to Enforce. The Court also abated the Removed Amerosa Florida Case pending this ruling and reserved ruling on the Amerosa Plaintiffs' Motion for Remand or Abstention [DE #13 in Adv. No. 15-1390].

The Second Motion to Enforce involves a lawsuit stemming from the 2012 crash of a Piper PA-38-112 Tomahawk aircraft in England which resulted in the death of two passengers. The plaintiffs from this crash (the "Hendrickson Plaintiffs") filed a lawsuit in Florida against New Piper (*Laura Hendrickson et al. v. Piper Aircraft, Inc.*, Case No. 2014 CA 000843) (the "Hendrickson Florida Case"). The amended complaint filed on February 10, 2015 (the "Hendrickson Complaint") [DE# 3101-14) asserts two counts against New Piper, one for negligence and the other for strict liability, stemming from New Piper's alleged failure to properly revise a Pilots Operating Handbook ("POH").

Upon receipt of the First Motion to Enforce, the Court entered an Order Setting Hearing on Motion to Enforce

4

Confirmation Order [DE #3093] setting a briefing schedule and scheduling a hearing on July 16, 2015. The Amerosa Plaintiffs and the Trust filed responses to the First Motion to Enforce [DE #3102 and #3111]. New Piper, in turn, filed two replies in support of the First Motion to Enforce [DE #3125 and #3126].

At the July 16th hearing the Court heard argument only on the First Motion to Enforce. However, the Second Motion to Enforce has now been fully briefed. The Hendrickson Plaintiffs filed a response on July 30, 2015 [DE #3152], the Trust filed a response on July 10, 2015, and New Piper filed a reply on August 14, 2015 [DE #3162]. The legal issues presented in the Second Motion to Enforce are nearly identical to the issues in the First Motion to Enforce. Therefore, the Court will rule on the Second Motion to Enforce without hearing oral argument.

The July 16th hearing also included arguments on the Motion of Howard Berlin, as Trustee of the Piper Aircraft Corporation Irrevocable Trust, for Protection from Piper Aircraft, Inc.'s Request for Production of Documents [DE #3103] (the "Motion for Protective Order").  After the hearing, the Court entered an Order, which among other things, reserved ruling on the two Motions to Enforce and on the Motion for Protective Order [DE #3137]. Because the Court is denying the two Motions to Enforce, the Motion for Protective Order will be granted. Based on this

ruling, the Court will also be granting the Motion for Remand or for Abstention by separate order in Adv. No. 15-1390-RAM.

## Background Facts

On July 1, 1991 Old Piper filed a voluntary chapter 11 petition which culminated in the First Amended Joint Chapter 11 Plan of Reorganization of the Debtor, the Official Committee of Unsecured Creditors of Piper Aircraft Corporation, Newco PAC, Inc., Teledyne Industries, Inc. and Dimeling, Schreiber and Park [DE #3087-1](the "Plan"). The Plan was confirmed on July 11, 1995 [DE #2201]. The Plan provided for the sale of substantially all of the Debtor's assets and for the creation of the Trust. The structure of the Trust and its mechanisms are embodied in the Piper Aircraft Corporation Irrevocable Trust Agreement [DE #3087-2] (the "Trust Agreement"), which is incorporated by reference into the Plan.

The Trust was created to address successor liability and protect the purchaser, New Piper, from incurring costs and facing liability in defending against certain claims defined as Future Claims. Any party holding a Future Claim, instead of suing New Piper as the successor entity to Old Piper, must look to the Trust for relief and follow the procedures set forth in the Trust Agreement for filing a claim. Section 8.10 of the Plan contains a channeling injunction preventing holders of Future Claims from asserting those claims against New Piper:

6

> As of the Effective Date, all Entities shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of, directly or indirectly, asserting, prosecuting, proceeding, collecting, recovering, or receiving payment of, on, or with respect to any Product Liability Claims or Future Claims (other than actions brought to enforce any right or obligation under the Plan [or] the Trust Agreement...), including but not limited to...(a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding... against or affecting any Protected Party, or any property of any Protected Party[.]

Future Claims are defined in Section 1.1(b) of the Trust Agreement as:

> [A]ll causes of action, rights and interests of all persons, whether known or unknown, born or unborn, who may, after the Confirmation Date, assert a claim against the Debtor, NEWCO or the Trust for personal injury, property damage, wrongful death, damages, contribution and/or indemnification, based in whole or in part upon events occurring or arising after the Confirmation Date (including, without limitation, claims based on the law of product liability, design defects and failure to warn), but only to the extent that liability exists because of aircraft or aircraft parts manufactured, sold, designed, distributed or supported by Old Piper or the Debtor prior to the Confirmation Date (including, without limitation, liability based on the law of product liability, design defects and failure to warn) unless and until such Future Claim becomes a Resolved Future Claim.

In section 2.2 of the Trust Agreement, the Trust agrees to indemnify New Piper and hold it harmless with respect to any costs or damages it incurs in connection with Future Claims. However, section 2.2 also includes a sentence which states that:

7

> The Trust does not assume, and does not agree to indemnify Newco for, that part of any Future Claim based upon Newco's failure to warn regarding an allegedly defective product, design, or component where, after the Effective Date, Newco either acquired, or reasonably should have acquired, information which (i) reasonably should have led Newco to warn regarding the allegedly defective product, design or component; and (ii) was not known, and reasonably could not have been known, by Old Piper prior to the Effective Date.

The Amerosa Plaintiffs, aware of the Trust and the Plan, drafted the Amerosa Complaints to focus on New Piper's failure to warn of a defect not known by Old Piper, a defect which New Piper became aware of after the Plan was confirmed. Allegations in the Amerosa Complaints mirror the language of section 2.2. The Amerosa Complaints specifically alleges that:

> The Piper defendants failed to warn about the defects in this product, its design and components, which it acquired or should have acquired after the formation of New Piper through the pattern of in-flight breakup accidents which, due to their timing (i) reasonably should have led the Piper defendants to warn regarding the allegedly defective product design or component and (ii) was not known, and reasonably could not have been known by Old Piper prior to the formation of the trust.

[DE #3087-7 pp. 19-20]

The Hendrickson Complaint also does not seek to impose liability on New Piper based upon any pre-confirmation wrongdoing by Old Piper. The Hendrickson Complaint is based

8

solely on New Piper's failure to update a POH after the National Transportation Safety Bureau, together with the Federal Aviation Administration, issued a safety recommendation that slow flight and stall training exercises in the Piper PA-38-112 Tomahawk should be conducted at increased altitudes. The Hendrickson Complaint alleges that after multiple accidents involving the Piper PA-38-112 Tomahawk during stall training exercises, New Piper was negligent in waiting to revise the POH until September 2012, after the Hendrickson crash [DE #3101-4 pp. 4-6].

### The Amerosa and Hendrickson Claims are Not Future Claims

The Trust and the channeling injunction were drafted to protect New Piper from liability arising from post-confirmation crashes of planes built by Old Piper where liability is based on Old Piper's wrongful acts. They protect New Piper from successor liability, that is, liability based solely on New Piper's ownership of Old Piper's assets when the alleged wrongdoing is by Old Piper. These are the claims defined in the Plan and the Trust Agreement as Future Claims.

Two conditions stated in the Future Claims definition accomplish this purpose. First, to be a Future Claim, liability must exist because of planes or parts manufactured by Old Piper. Second, liability must be based on claims of wrongdoing by Old Piper whether based on product liability, design defects, or failure to warn.

Based upon the definition, the claims asserted in the Hendrickson Complaint are not Future Claims. The Hendrickson Complaint does not allege defects in the plane built by Old Piper or allege that the POH in effect pre-confirmation was negligently prepared or defective. The Hendrickson Complaint focuses solely on New Piper's negligent failure to revise the POH until after the August 16, 2012 accident.

The claims asserted in the Amerosa Complaints are not Future Claims either. The Plaintiffs allege, and seek to establish liability, based upon post-confirmation wrongdoing by New Piper, including New Piper's failure to warn about defects which it knew or should have known about through a pattern of in-flight breakup accidents that occurred after New Piper's acquisition of the assets under the confirmed plan [DE# 2-13, pp. 20-21, ¶ 58]. The liability asserted against New Piper in the Amerosa Complaints is not based on design defects at the time the plane was manufactured. Notwithstanding that the plane that crashed was built by Old Piper and the allegation that "[t]he dangerous defects in the components which caused this accident existed at the time the aircraft was manufactured and first sold ..." [DE 3087-7, p. 25, ¶ 86], if the Amerosa Plaintiffs only

prove defects in the design and manufacture of parts by Old Piper, the Plaintiffs will lose.[1]

New Piper's liability under both the Hendrickson and Amerosa Complaints can only be established by proof of wrongdoing by New Piper. Because liability cannot be established based on wrongdoing by Old Piper, the claims asserted in the Hendrickson and Amerosa Complaints are not Future Claims. Therefore, the Hendrickson and Amerosa claims are not channeled to the Trust and the Plaintiffs are not in violation of the channeling injunction in prosecuting these claims in state court.

## Claims Carved Out of the the Trust's Indemnification Obligation are not Future Claims

Having found that the claims against New Piper by the Amerosa and Hendrickson Plaintiffs are not Future Claims, no further analysis is required. Nevertheless, because the parties presented argument on the meaning of the indemnification exception language in Section 2.2 of the Trust Agreement, the Court will interpret this language.

As cited earlier in this Order, Section 2.2 carves out failure to warn claims for defects not known to Old Piper, but known to New Piper as a result of information acquired post-

---

[1] Counsel for the Amerosa Plaintiffs confirmed the accuracy of this statement at the July 16th hearing.

confirmation. As discussed earlier, both the Amerosa and Hendrickson complaints specifically allege failure to warn claims that fit both elements of the Section 2.2 exception. Therefore, the claims by both groups of Plaintiffs are claims that are not covered by the Trust's indemnification obligation.

The first clause of the Section 2.2 exception states that "[t]he Trust does not assume, and does not agree to indemnify Newco for, *that part of any Future Claim*" that falls within the exception. Section 2.2 of the Trust Agreement (emphasis added). Because the sentence uses the phrase "that part of any Future Claim," New Piper argues that claims fitting the Section 2.2 exception are still Future Claims that must be channeled to and administered by the Trust.

The Court rejects New Piper's interpretation. Requiring the Trust to defend claims that are expressly excepted from its indemnification obligation makes no sense. This interpretation forces the Plaintiffs to proceed against the Trust on claims that assert no liability against the Trust. Moreover, if this process plays out all the way through a decision in binding arbitration or in federal district court, a finding that the Trust is not liable would have no *res judicata* or collateral estoppel effect on New Piper because New Piper did not participate in the process. The logical procedure, and the procedure contemplated by the Plan and Trust Agreement, is for

plaintiffs who are asserting claims based solely on wrongful acts by New Piper to pursue those claims against New Piper directly.

New Piper's argument to categorize claims that do not assert any wrongdoing by Old Piper and are not covered by the Trust's indemnification obligations as Future Claims does not fit into the structure and protections of the Plan and Trust Agreement. The Court therefore finds that any claims that fall within the Section 2.2 exception are not Future Claims. For purposes of the contested matters at issue, that includes all of the claims asserted by the Amerosa and Hendrickson Plaintiffs in their state court lawsuits against New Piper.

## Conclusion

The Plan and Trust Agreement were designed to protect New Piper from successor liability, meaning liability for the acts and omissions of Old Piper. The Plan and Trust Agreement were not intended to protect, and do not protect, New Piper from liability for its own negligent acts or omissions. Therefore, it is –

**ORDERED** as follows:

1. The First Motion to Enforce [DE #3087] is denied.
2. The Second Motion to Enforce [DE #3101] is denied.
3. The Motion for Protective Order [DE #3103] is granted.

###

COPIES TO:

Paul Steven Singerman, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, FL  33131
(Counsel for the Trust)

Eric Pendergraft, Esq.
SHRAIBERG, FERRARA & LANDAU P.A.
2385 NW Executive Center Drive, Suite 300
Boca Raton, FL  33431
(Counsel for New Piper)

Scott L. Baena, Esq.
BILZIN SUMBERG BAENA PRICE
& AXELROD LLP
1450 Brickell Avenue, Suite 2300
Miami, FL  33131-3456
(Counsel for the Amerosa Plaintiffs)

Bradley J. Stoll, Esq.
THE WOLK LAW FIRM
1710-12 Locust Street
Philadelphia, PA  19103
(Counsel for the Amerosa Plaintiffs)

Paul Jon Layne, Esq.
SILVA & SILVA, P.A.
236 Valencia Avenue
Coral Gables, FL  33134
(Counsel for the Hendrickson Plaintiffs)

Floyd A. Wisner, Esq.
WISNER LAW FIRM, P.C.
514 W. State Street, Suite 200
Geneva, IL  60134
(Counsel for the Hendrickson Plaintiffs)