Case 91-31884-RAM    Doc 3221    Filed 07/23/19    Page 1 of 12



**ORDERED in the Southern District of Florida on July 23, 2019.**

　　　　　　　　　　　　　　　　　　　　　　　Robert A. Mark, Judge
　　　　　　　　　　　　　　　　　　　　　　　United States Bankruptcy Court

_____

```
           UNITED STATES BANKRUPTCY COURT
             SOUTHERN DISTRICT OF FLORIDA
                    MIAMI DIVISION
_____
                               )
In re:                         )   CASE NO.  91-31884-BKC-RAM
                               )   CHAPTER   11
PIPER AIRCRAFT CORPORATION,    )
                               )
            Debtor.            )
_____)
```

### ORDER DENYING PIPER AIRCRAFT, INC.'S
### <u>MOTION TO ENFORCE CHANNELING INJUNCTION</u>

The Court confirmed a chapter 11 plan (the "Plan") in this case on July 11, 1995 [DE# 2201]. The Plan provided for the sale of substantially all of the assets of the Debtor ("Old Piper") to Piper Aircraft, Inc. ("New Piper"). The Plan included provisions protecting New Piper from successor liability that it might

1

otherwise have been subjected to if sued by victims of post-confirmation plane crashes.

This protection was accomplished by the creation and funding of the Piper Aircraft Corporation Irrevocable Trust (the "Trust") and inclusion of a channeling injunction in the Plan that require victims of post-confirmation crashes to assert certain claims against the Trust, and not against New Piper. The requirement to assert claims against the Trust applies to those claims that fall within the definition of a "Future Claim," as that term is defined in the Trust documents and the Plan.

The subject of this Order is a Motion to Enforce Channeling Injunction (the "Motion") [DE #3206] filed by New Piper. New Piper is the defendant in a wrongful death action filed against it in Florida state court, Case No. 2019-30422 CICI (the "Capra Claim" or the "Capra Complaint"). The Capra Claim arose from the 2018 crash of an aircraft that was built by New Piper in 2007.

Even though New Piper built and sold the plane, New Piper asserts that the Capra Claim is a claim that should be channeled to, and defended by, the Trust. New Piper argues that the Capra Claim is based on alleged defects in the plane or its parts that were designed by Old Piper, and therefore, is within the definition of a Future Claim.

The Trustee of the Trust and Capra both filed responses in opposition to the Motion [DE# 3210 and 3211]. New Piper filed

a reply in support of the Motion [DE# 3218].  The Court conducted a hearing on the Motion on May 28, 2019.

The Court has reviewed the record, including the relevant Plan documents, and considered the arguments of counsel.  For the reasons set forth below, the Court finds that (i) claims arising from crashes of aircraft built by New Piper are not "Future Claims" as defined in the Trust, and (ii) even if a claim could be asserted against Old Piper for its design of an aircraft built by New Piper, the Capra Claim is asserted against only New Piper and is based on only New Piper's alleged wrongful conduct.  Therefore, New Piper's Motion will be denied.

## Background Facts

The assets purchased by New Piper in 1995 included aircraft designs and type certificates.  The Federal Aviation Administration issues type certificates when it approves an aircraft design. 49 U.S.C. § 44704(a)(1). To manufacture aircraft, a type certificate is required, and the holder of a type certificate has exclusive manufacturing rights. 49 U.S.C. §§ 44704(a)(3), (c).

In 2007, New Piper manufactured the PA-28R-201 aircraft (the "Accident Aircraft") whose crash gave rise to the Capra Claim. Although the Capra Complaint names only one defendant, New Piper, some of the allegations in the Capra Complaint describe misconduct by Old Piper. [DE #3206-1].  Those allegations include reference

3

to a 1987 crash of a plane built by Old Piper and inspected in accordance with Old Piper's continuing airworthiness instructions. *Id.* at ¶¶ 33-39.  The 1987 accident aircraft was the same model plane as the 2018 Accident Aircraft.

The Capra Complaint states that the Accident Aircraft at issue in the Capra Claim suffered from the same design defect that caused the 1987 accident. *Id.* at ¶ 43.  Moreover, the Capra Complaint describes a continuing pattern of concealment of the alleged design defect, beginning with Old Piper and continuing under New Piper. *Id.* at ¶¶ 38-42, 45, 53-55, 63.

For purposes of the Motion, the most critical allegations of misconduct involving Old Piper relate to Old Piper's design of the Accident Aircraft.  New Piper manufactured the Accident Aircraft with a type certificate that it acquired from Old Piper. Therefore, Old Piper originated the Accident Aircraft's design. The issue is whether the Capra Claims are Future Claims because the Accident Aircraft was built using an Old Piper design.  The Court concludes that they are not.

### Bankruptcy Case History

When Old Piper sought to confirm a chapter 11 plan and emerge from bankruptcy, future claims loomed large.  Over 50,000 Piper aircraft were still flying, and post-confirmation crashes of these prepetition planes were inevitable.  Old Piper needed to sell its assets to fund a Plan, and the going concern value of Old Piper's

4

assets would be materially diminished if the buyer was subject to successor liability for damage or injury sustained as a result of Old Piper's misconduct. Therefore, the Plan provided that all future claims involving misconduct by Old Piper would be channeled to a Piper Trust that New Piper agreed to fund on an ongoing basis. *Id.* at §§ 8.10, 9.14.

> Section 1.1(b) of the Trust defines "Future Claim" as follows:
>
> [A]ll causes of action, rights and interests of all persons, whether known or unknown, born or unborn, who may, after the Confirmation Date, assert a claim against the Debtor, NEWCO or the Trust for personal injury, property damage, wrongful death, damages, contribution and/or indemnification, based in whole or in part upon events occurring or arising after the Confirmation Date (including, without limitation, claims based on the law of product liability, design defects and failure to warn), but only to the extent that liability exists because of aircraft or aircraft parts manufactured, sold, <u>designed</u>, distributed or supported by Old Piper or the Debtor prior to the Confirmation Date (including, without limitation, liability based on the law of product liability, design defects and failure to warn) unless and until such Future Claim becomes a Resolved Future Claim.

[DE #3101-2/3087-2] (emphasis added). Because New Piper manufactured the Accident Aircraft with a type certificate based on an Old Piper design, New Piper argues that the Capra Claim is a "Future Claim" that must be channeled to the Piper Trust.

Although the Court has not previously addressed the meaning of "design" within the definition of "Future Claims", the Court has had occasion to assess the scope of "Future Claims." New Piper's present request for enforcement of the Plan's channeling

5

injunction is the third time that New Piper has asked the Court to determine whether a claim filed against it is a "Future Claim." [DE #3087, 3101]. The Court addressed New Piper's two prior requests in a 2015 decision (the "2015 Decision") [DE #3166] that was affirmed by the U.S. District Court for the Southern District of Florida (the "District Court") [DE #3196].

Old Piper built the two planes at issue in the 2015 Decision. However, the claims made by the representatives of the decedents' estates, which generally might be described as failure-to-warn claims, were claims against only New Piper. Specifically, New Piper's alleged failure to warn of a defect unknown to Old Piper and alleged failure to update a Pilot's Operating Handbook were the gravamen of the wrongful death actions at issue in 2015 (the "2015 Claims"). "Because liability [for the 2015 Claims could not] . . . be established based on wrongdoing by Old Piper," the Court ruled that the 2015 Claims were not "Future Claims." 2015 Decision at p.11.

The Court explained that the Piper Trust and channeling injunction were intended to "protect New Piper from successor liability . . . [only] when the alleged wrongdoing is by Old Piper." 2015 Decision at p.9. The District Court agreed, adding that the 2015 Claims "are not 'Future Claims' because New Piper's alleged liability exists on account of independent post-confirmation wrongdoing by New Piper." [DE #3196, p.4].

6

Analyzing whether the 2015 Claims were Future Claims was challenging because the planes that crashed were built by Old Piper.  Reaching a decision on the current Motion is far easier.  Like the allegations in the complaints at issue in the 2015 Claims, the Capra Complaint, as clarified, is based solely on New Piper's alleged post-confirmation misconduct.  But there is an even clearer path to the Court's decision on the Motion.  Future Claims simply do not include, and were never intended to include, claims arising from the crash of New Piper planes.

## Discussion

### I. Claims arising from the Crash of New Piper Airplanes are not Future Claims

New Piper's Motion focuses on the word "design" included in the Trust's definition of Future Claims.  The Court finds that the use of the word "design" in the definition does not expand the scope of Future Claims to include crashes of New Piper planes even if New Piper built the planes utilizing the same design that Old Piper used in building the same model aircraft.

Old Piper's Plan was confirmed in 1995, and the Trust was created and funded to address Future Claims.  The Trust has remained in effect for twenty-four (24) years, and this is the first time that New Piper has attempted to hold the Trust responsible for claims arising from planes built by New Piper.  This is not surprising.  The Plan and the Trust never contemplated

that claims arising from the crash of a New Piper plane would be treated as Future Claims.

In its 2015 Decision, the Court stated that the Plan "protected New Piper from successor liability that it might otherwise have been subjected to if sued by victims of post-confirmation crashes of <u>planes built by [Old Piper]</u>." [DE# 3166 pp. 1-2] (emphasis added). The reference to only Old Piper planes is consistent with the language in the Amended Disclosure Statement filed on May 19, 1995. The Amended Disclosure Statement describes the treatment of Product Liability Claims as "intended to protect [New Piper] against product liability exposure <u>from the aircraft manufactured by the Debtor [i.e. Old Piper]</u>." [DE# 2054, included in DE# 3210, p. 112] (emphasis added).

The Amended Disclosure Statement also states that "[w]ith respect to ongoing production, the APLAA[1] provides for (New Piper) to insure against the product liability risks related to aircraft and spare parts produced by it." *Id*. Thus, the Plan and Trust clearly distinguished product liability claims arising from crashes of Old Piper planes, for which New Piper would be protected, and crashes of New Piper planes, for which New Piper needed to maintain insurance.

---

[1] APLAA refers to the Asset Purchase and Liability Assumption Agreement executed in conjunction with the Plan [DE# 3210, p. 87].

8

Moreover, to determine the amounts necessary to fund the Trust at confirmation, actuarial firms only considered data relating to aircraft manufactured by Old Piper [DE# 3210, p. 19]. The Trustee also proffered that New Piper provided the actuaries with data only on Old Piper planes when the Future Claims Note was recomputed in 2002 [DE# 3210, p. 22].[2] Moreover, as the Trustee argued at the May 28th hearing, it is difficult to envision an actuarial process that could have included any subset of New Piper planes. After all, how could anyone have predicted the number of planes that New Piper would manufacture utilizing Old Piper designs?

In sum, although the word "design" is used in the definition of Future Claims, the clear intent of the Plan, the Trust and the channeling injunction was to protect New Piper from successor liability for claims arising out of crashes of only Old Piper planes.

## II. The Capra Claim is Based Solely On Alleged Misconduct by New Piper

Even if the Future Claim definition was interpreted to include claims arising from crashes of New Piper planes built with Old Piper design defects, the Capra Claim still would not be a Future

---

[2] The May 28, 2019 hearing on the Motion was not evidentiary so the Trustee did not offer exhibits or testimony to support his description of the actuarial process. However, New Piper did not challenge these assertions in its Reply or at the hearing.

Claim because it is based solely on New Piper's alleged post-confirmation misconduct.

Two of the six counts of the Capra Complaint, strict liability and breach of express and implied warranties, can only be prosecuted against the manufacturer or distributor of the Accident Aircraft. *Samuel Friedland Family Enters. v. Amoroso*, 630 So.2d 1067, 1068-1071 (Fla. 1994) (In Florida, the doctrine of strict liability as to defective products applies to manufacturers and entities in the distributive chain, such as retailers, wholesalers, distributors, and commercial lessors); Fla. Stat. §§ 672.313, 672.314, 672.315 (identifying only sellers of goods as the makers of express or implied warranties). Because New Piper is the exclusive manufacturer and distributor of the Accident Aircraft, only New Piper bears liability for those counts.

The balance of the counts that comprise the Capra Complaint also are claims based on only New Piper's alleged misconduct. Those four counts are negligence, negligent failure to warn, fraudulent concealment, and fraudulent misrepresentation. Obviously, Old Piper did not make fraudulent misrepresentations, or fraudulently conceal information, about an airplane manufactured by New Piper in 2007. And of course, Old Piper did not negligently make or sell the Accident Aircraft.

Upon New Piper's 1995 acquisition of the type certificate for the Accident Aircraft, New Piper became the exclusive owner of the

10

Accident Aircraft's design. 49 U.S.C. § 44704(a)(3).  Liability for the Capra Claim lies not in mere ownership of the allegedly defective design, but rather in the decision (i) to manufacture aircraft with prior knowledge of defects in the design, and (ii) to avoid or omit classifications and warnings that would put the public on notice of known defects in the aircraft's design.  That alleged misconduct is New Piper's alone.  Because liability for the Capra Claim cannot be established based on wrongdoing by Old Piper, the Capra Claim is not a Future Claim.

Finally, if there was any question as to whether Capra's Claim is dependent on Old Piper's alleged misconduct, Capra's counsel specifically stipulated that New Piper's liability is independent of, not derivative of, any misconduct by Old Piper.  As also acknowledged in similar terms by Capra's local counsel at the May 28th hearing, Capra is not alleging that New Piper has successor liability for any bad acts of Old Piper described in the Capra Complaint.

## Conclusion

The Capra Claim is not a Future Claim that must be channeled to the Trust for two compelling reasons.  First, the definition of a Future Claim in the Plan and Trust does not include any claims arising from the crash of planes built and sold by New Piper.  Second, even if the definition was interpreted to possibly include claims arising from crashes of New Piper planes built from Old

11

Piper designs, the Capra Claim is not a Future Claim because Capra is pursuing New Piper for its own alleged misconduct, not for successor liability based on Old Piper's alleged misconduct.  For these reasons, it is -

    **ORDERED** that the Motion is denied.

###

COPIES TO:

Vincent F. Alexander, Esq.
LEWIS BRISBOIS BISGAARD & SMITH, LLP
110 SE 6th Street – Suite 2600
Ft. Lauderdale, FL  33301
(Counsel for New Piper)

Howard J. Berlin, Esq.
BERGER SINGERMAN
1450 Brickell Avenue – Suite 1900
Miami, FL  33131
(Trustee for Piper Aircraft Trust)

James D. Gassenheimer, Esq.
BERGER SINGERMAN
1450 Brickell Avenue – Suite 1900
Miami, FL  33131
(Counsel for Trustee for Piper Aircraft Trust)

Jeffrey I. Snyder, Esq.
BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
1450 Brickell Avenue – Suite 2300
Miami, FL  33131
(Attorney for John Charles Capra)